Matter of Malerba (2022 NY Slip Op 04172)

Matter of Malerba

2022 NY Slip Op 04172

Decided on June 29, 2022

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 29, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
REINALDO E. RIVERA, JJ.

2019-03589 

[*1]In the Matter of Mary Malerba, admitted as Mary Sheila Malerba. (Attorney Registration No. 4232500)

The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on July 21, 2004, under the name Mary Sheila Malerba. By order to show cause dated April 18, 2019, the respondent was directed to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing reciprocal discipline upon her for the misconduct underlying the discipline imposed by an order of the United States District Court for the Southern District of New York dated January 16, 2019. By opinion and order dated February 13, 2020, this Court imposed reciprocal discipline on the respondent and suspended her from the practice of law for a period of six months, commencing March 16, 2020 (see Matter of Malerba, 182 AD3d 91). By decision and order on motion of this Court dated November 4, 2020, the respondent was reinstated as an attorney and counselor-at-law. By opinion dated December 14, 2021, the Court of Appeals reversed the opinion and order of this Court and remitted the matter to this Court for further proceedings in accordance with its opinion (see Matter of Hallock, 37 NY3d 436).

Catherine A. Sheridan, Hauppauge, NY (Elizabeth A. Grabowski of counsel), for Grievance Committee for the Tenth Judicial District.
Scalise & Hamilton, P.C., Scarsdale, NY (Deborah A. Scalise of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
By order dated January 16, 2019, the United States District Court for the Southern District of New York (hereinafter the District Court) censured the respondent, on consent, for her violation of rules 5.1(b)(1), (2) of the Rules of Professional Conduct (22 NYCRR 1200.0) (failure to ensure that Oleg Smolyar, an attorney under her supervision, conformed to the Rules of Professional Conduct) and (d)(2)(ii) (responsibility for Smolyar's misconduct); and 8.4(h) (engaging in conduct that reflects adversely on the respondent's fitness to practice law) of the Rules of Professional Conduct. By opinion and order dated February 13, 2020, this Court imposed reciprocal discipline on the respondent and suspended her from the practice of law for a period of six months, commencing March 16, 2020 (see Matter of Malerba, 182 AD3d 91). By decision and order on motion of this Court dated November 4, 2020, the respondent was reinstated as an attorney and counselor-at-law. By opinion dated December 14, 2021, the Court of Appeals reversed the opinion and order of this Court and remitted the matter to this Court for further proceedings in accordance with its opinion (see Matter of Hallock, 37 NY3d 436).
Upon remittitur, we conclude that the imposition of reciprocal discipline is warranted. [*2]Accordingly, the respondent is suspended from the practice of law for a period of six months, nunc pro tunc to March 16, 2020.
District Court Proceedings
The law firm of Hallock & Malerba, P.C. (hereinafter the law firm), of which the
respondent was a named partner, represented the plaintiff, Sheri Luscier, in a personal injury action commenced in the District Court entitled Luscier v Risinger Bros. Transfer, Inc. (SD NY, Castel, J., No. 13-cv-8553). The disciplinary action taken by the District Court against the respondent, in the form of a censure, was predicated on the respondent's conduct in that personal injury action, and is detailed in a Memorandum and Order on Sanctions issued on September 17, 2015, by the Honorable P. Kevin Castel, who imposed sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against the law firm, and pursuant to Rules 11 and 56(h) of the Federal Rules of Civil Procedure against Smolyar (see Luscier v Risinger Bros. Transfer, Inc., 2015 WL 5638063, *1, 2015 US Dist LEXIS 129640, *3-4 [SD NY, 13-cv-8553 (PKC)].
Memorandum and Order on Sanctions
The relevant facts as set forth in the Memorandum and Order on Sanctions are summarized as follows. Sheri Luscier, who was represented by the law firm, commenced a personal injury action claiming serious injury as a result of an automobile accident (see 2015 WL 5638063, *1-2, 2015 US Dist LEXIS 129640, *1, *4). On June 1, 2015, the respondent's law partner, Larry Hallock, filed an affirmation in opposition to the defendants' motion for summary judgment. Among the documents filed in opposition to the defendants' motion was an affidavit from the plaintiff, Luscier (hereinafter the Luscier Affidavit), which was later found by Judge Castel to be a "sham filing of no evidentiary worth" (2015 WL 5638063, *1, 2015 US Dist LEXIS 129640, *4). Smolyar, the notary public on the Luscier Affidavit, purportedly administered the oath in Suffolk County. The summary judgment motion was denied, and on June 15, 2015, a jury was impaneled (see 2015 WL 5638063, *2, 2015 US Dist LEXIS 129640, *4). At trial, on cross-examination, it was elicited from Luscier that she had not previously seen the Luscier Affidavit, did not know its contents and did not swear to its truth, and that the signature above the attestation of the notary public did not look like her signature. Luscier remembered giving "Mary" permission to sign her name because Luscier was in Massachusetts. She testified that she did not review the Luscier Affidavit before giving her permission and was not sure whether anyone discussed with her "paragraph by paragraph" what was said in the Luscier Affidavit. Judge Castel, in a side bar conference, directed Hallock to have his law partner, the respondent, file a declaration by June 18, 2015, explaining the circumstances surrounding the Luscier Affidavit and its execution. On June 19, 2015, Judge Castel brought to Hallock's attention that no affidavit or declaration had been submitted. Hallock indicated that an associate at the law firm was responsible for the Luscier Affidavit and that he would secure an affidavit from that associate (see 2015 WL 5638063, *2, 2015 US Dist LEXIS 129640, *4). That same day, the jury returned a special verdict finding that neither defendant was negligent.
On June 23, 2015, Hallock filed on the District Court's electronic case filing system "an affidavit" from Smolyar—the "associate" that Hallock claimed was responsible for the Luscier Affidavit (2015 WL 5638063,*3, 2015 US Dist LEXIS 129640, *7). Although labeled "Attorney's Affidavit" and signed by Smolyar, the document was neither sworn to before a notary nor was it declared under penalty of perjury. It is undisputed that the Attorney's Affidavit was drafted "verbatim" by Hallock (2015 WL 5638063, *6, 2015 US Dist LEXIS 129640, *17). Smolyar explained in the Attorney's Affidavit that he read the Luscier Affidavit to Luscier "word for word," that he made several changes upon her request, and after making the changes, he again spoke with her about the contents and "advised her that the papers were due and needed her signature" (2015 WL 5638063, *3, 2015 US Dist LEXIS 129640, *7 [internal quotation marks omitted]). Smolyar stated that Luscier advised him that the law firm had a power of attorney, and that he had permission to sign her name. Smolyar admitted that he "signed those papers on her behalf and they were submitted to the court" (2015 WL 5638063, *3, 2015 US Dist LEXIS 129640, *8 [internal quotation marks omitted]).
As a result of these revelations, on June 23, 2015, Judge Castel issued an order to show cause directing the law firm, Hallock, the respondent, and Smolyar to show cause why sanctions should not be imposed.
On July 13, 2015, Smolyar, who was now represented by counsel, submitted a declaration recanting the Attorney's Affidavit, stating that he never spoke to Luscier about her [*3]affidavit, that she never suggested and he never incorporated any edits to the draft affidavit, and that he never read the Luscier Affidavit to her (see 2015 WL 5638063, *3, 2015 US Dist LEXIS 129640, *9). Smolyar stated in his declaration that the respondent had explained to him the urgency of the matter, that Luscier was in Massachusetts and would be physically unable to sign her affidavit in time to submit it to the District Court, and that the law firm had Luscier's power of attorney, which permitted the firm to sign documents on Luscier's behalf. Smolyar emphasized that the respondent told him that either she or Hallock would review the contents of the affidavit with Luscier before submitting it to the District Court (see 2015 WL 5638063, *3, 2015 US Dist LEXIS 129640, *9). Smolyar stated that the incident was an "isolated and aberrational incident" and that to the best of his recollection, he "ha[d] never before signed the name of any client onto any document" nor had he ever "notarized [his] own signature or the signature of an individual who did not sign in [his] presence" (2015 WL 5638063, *4, 2015 US Dist LEXIS 129640, *10, *11 [internal quotation marks omitted]). He further stated in his declaration that the respondent and Hallock had to have known, in this "urgent" matter, that he could not have possibly met with Luscier and notarized her signature in person. In sum, Smolyar's declaration clarified that the jurat on the Luscier Affidavit was false and that the Attorney's Affidavit, which explained the circumstances of the Luscier Affidavit, contained several material falsehoods (2015 WL 5638063, *4, 2015 US Dist LEXIS 129640, *11 [internal quotation marks omitted]).
After receiving Smolyar's declaration, Judge Castel issued another order, expanding the bases for possible sanctions. Judge Castel placed Smolyar on notice that the District Court was considering sanctioning him based upon his submission of false statements to the court, i.e., the Attorney's Affidavit (see Rules of Professional Conduct rules 3.3[a][1], [3]; 8.4[a], [c], [d]). The respondent, Hallock, and the law firm were also placed on notice and directed to explain why they should not be sanctioned based upon the submission of false statements to the District Court, failure to correct false statements of material fact to the District Court, offering or using evidence that the lawyer knows to be false, engaging in conduct that amounts to violating or attempting to violate the Rules of Professional Conduct or knowingly assisting or inducing another to do so, engaging in conduct that is prejudicial to the administration of justice, and for failure to supervise (see Rules of Professional Conduct rules 3.3[a][1], [3]; 5.1, 8.4[a], [c], [d]).
In response to the order to show cause, the respondent and Hallock submitted declarations denying knowledge or involvement in the execution of the Luscier Affidavit. The respondent and Hallock claimed that they had no reason to believe that the Luscier Affidavit had not been signed by Luscier and were shocked to learn about Smolyar's conduct (see 2015 WL 5638063, *5, 2015 US Dist LEXIS 129640, *12-13). The respondent declared, inter alia, that she never told Smolyar that the law firm had a power of attorney authorizing the firm's lawyers to sign a client's signature on an affidavit. The respondent explained that Luscier's testimony at trial—that she remembered Mary saying she can have permission to sign her name because Luscier was in Massachusetts and the respondent was in New York—referred to a limited power of attorney Luscier signed during intake when she first retained the law firm in 2013 (see 2015 WL 5638063, *5, 2015 US Dist LEXIS 129640, *14-15). The respondent asserted that Luscier's testimony at trial did not indicate that the respondent ever spoke to Luscier in connection with the Luscier Affidavit, let alone that the respondent had asked for her permission, on behalf of herself or any other attorney, to sign the document (see 2015 WL 5638063, *5, 2015 US Dist LEXIS 129640, *15). She also denied ever telling Smolyar that he was authorized to sign the Luscier Affidavit on the basis that she would review the contents with Luscier after Smolyar signed the document (see 2015 WL 5638063, *6-7, 2015 US Dist LEXIS 129640, *15).
Regarding the Attorney's Affidavit, Hallock stated that he drafted the affidavit for Smolyar because Smolyar had raised the possibility of lying to the District Court to claim that Luscier's signature was authentic. According to Hallock, he drafted the Attorney's Affidavit to ensure that it was consistent with the account relayed to him by Smolyar, and Smolyar "'was certainly free to make changes if the suggested language required corrections'" (2015 WL 5638063, *7, 2015 US Dist LEXIS 129640, *19). Judge Castel noted that Hallock did not inform Smolyar that his account, which was drafted by Hallock to be executed by Smolyar, would place Smolyar's version of events in direct conflict with Luscier's sworn testimony that she had never seen the Luscier Affidavit (see 2015 WL 5638063, *7, 2015 US Dist LEXIS 129640, *19). In contrast, Smolyar claimed that Hallock had drafted the Attorney's Affidavit before speaking to him, and instructed him to use the language provided without asking him about the execution of the Luscier [*4]Affidavit (see 2015 WL 5638063, *6-7, 2015 US Dist LEXIS 129640, *17-18).
The respondent and Hallock disclosed in their declarations that they discovered that Smolyar had improperly signed the affidavit of another client on June 18, 2015, less than three weeks after Smolyar executed the Luscier Affidavit. The respondent and Hallock declared that Smolyar's representation that he improperly signed and notarized a client affidavit on only one occasion was false (see 2015 WL 5638063, *6, 2015 US Dist LEXIS 129640, *16-17).
Confronted with these assertions, Smolyar, in an August 28, 2015 declaration, withdrew his statement regarding the isolated nature of his misconduct.
Judge Castel determined that Smolyar's conduct warranted sanctions under Rule 56(h) "for his bad faith conduct in relation to the 'Luscier Affidavit' submitted in opposition to defendants' summary judgment motion" (see 2015 WL 5638063, *8, 2015 US Dist LEXIS 129640, *23), and under Rule 11 for his "knowing submission of a false statement to the Court in the form of the 'Attorney's Affidavit'" (see 2015 5638063, *10, 2015 US Dist LEXIS 129640, *29). Judge Castel also determined that sanctions against the law firm were warranted under Rule 11 of the Federal Rules of Civil Procedure "not because of its misfortune of having employed a lone wolf, bad actor" (2015 WL 5638063, *12, 2015 US Dist LEXIS 129640, *34). Hallock, a named partner, "was a direct participant in the preparation and filing of the 'Attorney's Affidavit,'" which was prepared after Luscier had completed her trial testimony (2015 WL 5638063, *12, 2015 US Dist LEXIS 129640, *34). Judge Castel found that, even accepting Hallock's claim that he drafted the Attorney's Affidavit after speaking to Smolyar—whose account was "at odds" with Luscier's sworn trial testimony—Hallock had serious reasons to doubt the veracity of the contents of the Attorney's Affidavit (2015 WL 5638063, *12, 2015 US Dist LEXIS 129640, *36). Moreover, Hallock made no attempt to verify Smolyar's account before filing the Attorney's Affidavit with the District Court:
"[A] law firm concerned with the accuracy of statements to the Court would have telephoned the client, Ms. Luscier, and determined whether her recollection could be refreshed or, perhaps, upon further reflection, she believed she had been mistaken. Mr. Hallock already had reason to distrust Mr. Smolyar, given his false execution of the 'Luscier Affidavit' and his suggestion (according to Mr. Hallock) that he should lie to the Court in the 'Attorney's Affidavit.' Nevertheless, Mr. Hallock made no attempt to verify Mr. Smolyar's account before filing the 'Attorney's Affidavit' with the Court. That Mr. Smolyar was free to revise the draft affidavit does not insulate the law firm from responsibility. While the record before this Court is not sufficient to support a finding of actual knowledge on the part of Mr. Hallock of the falsity of the 'Attorney's Affidavit,' the record also does not support a finding that there are 'exceptional circumstances' that warrant exempting the law firm from joint responsibility for the conduct of its lawyer, Mr. Smolyar" (2015 WL 5638063, *12, 2015 US Dist LEXIS 129640, *36-37 [citations omitted]).
Had the respondent and Hallock investigated Smolyar's behavior before Hallock filed the Attorney's Affidavit, they could easily have known that Smolyar's account was false:
"The ease with which Mr. Smolyar's lie could have been exposed is demonstrated by the actions subsequently taken by Mr. Hallock and [the respondent]. After Mr. Smolyar admitted that he had never spoken to Ms. Luscier about the 'Luscier Affidavit,' Mr. Hallock and [the respondent] reviewed many of the motions and oppositions that Mr. Smolyar had recently prepared for the law firm. As part of their investigation, they . . . discovered that Mr. Smolyar, without ever speaking to [a client], signed an affidavit on both the client's behalf and as the notary public who purportedly administered the oath. Mr. Smolyar does not deny that he engaged in this misconduct. Had Mr. Hallock and [the respondent] investigated Mr. Smolyar's behavior before Mr. Hallock filed the 'Attorney's Affidavit,' the firm would have known that his account was false" (2015 WL 5638063, *13, 2015 US Dist LEXIS 129640, *37-38 [citations omitted]).
Judge Castel sanctioned Smolyar and the law firm, jointly and severally, in the amount of $9,000 under Rule 11 of the Federal Rules of Civil Procedure for the submission of the Attorney's Affidavit, sanctioned Smolyar $5,000 for the submission of the Luscier Affidavit under Rules 11 and 56(h) of the Federal Rules of Civil Procedure, and referred the matter to the Committee on Grievances of the District Court (hereinafter the Committee on Grievances). Judge Castel noted that the parties were given due notice and they were represented by able counsel. They were afforded an opportunity to provide live testimony at an evidentiary hearing—which they each declined (see Luscier v Risinger Bros. Transfer, Inc., 2015 WL 5638063, *14, 2015 US Dist LEXIS 129640, *41).
Statement of Charges and Order of the District Court
On July 7, 2016, the Committee on Grievances issued an order to show cause and statement of charges, directing the respondent to answer allegations that she assisted in the submission of a sham affidavit on behalf of her client, failed to supervise the attorney who drafted the sham affidavit, and assisted in submitting to the District Court a letter—the Attorney's Affidavit—that contained false statements designed to cover up the wrongdoing.
On October 31, 2018, the respondent submitted a declaration in which she admitted that she failed to fulfill her obligation to properly supervise Smolyar, in violation of the following Rules of Professional Conduct:
(1) 5.1(b)(1) "A lawyer with management responsibility in a law firm shall make reasonable efforts to ensure that other lawyers in the firm conform to these Rules";
(2) 5.1(b)(2) "A lawyer with direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the supervised lawyer conforms to these Rules";
(3) 5.1(d)(2)(ii) "A lawyer shall be responsible for a violation of these Rules by another lawyer if . . . the lawyer is a partner in a law firm or is a lawyer who individually or together with other lawyers possesses comparable managerial responsibility in a law firm in which the other lawyer practices or is a lawyer who has supervisory authority over the other lawyer; and . . . in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated"; and
(4) 8.4(h) "A lawyer or law firm shall not: . . . engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer."
Accordingly, the Committee on Grievances sustained various charges.
The respondent consented to a censure as a sanction for her misconduct. "Taking into consideration all of the circumstances indicated by the record, including the fact that . . . [the law firm] was sanctioned by Judge Castel pursuant to Rule 11," the Committee on Grievances determined that a censure was appropriate. Finding that the respondent raised no issue requiring a hearing, the District Court imposed a censure by order dated January 16, 2019.
Order to Show Cause
By order to show cause dated April 18, 2019, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing reciprocal discipline upon her for the misconduct underlying the discipline imposed by the District Court.
In a response dated June 7, 2019, submitted by her attorney, the respondent acknowledged that she was censured by the District Court. The respondent asked that this Court impose reciprocal discipline no more severe than a public censure, taking into consideration the following mitigating circumstances: her remorse, her cooperation with the District Court proceedings, her lack of a prior disciplinary history, sanctions already imposed by the District Court, and her reputation in the legal community for honesty and integrity as reflected in character letters submitted on her behalf.
Findings and Conclusion
Based on the foregoing, we find that the imposition of reciprocal discipline is warranted. The respondent admitted that she failed to fulfill her obligation to properly supervise Smolyar—who submitted the Luscier Affidavit and the Attorney's Affidavit. As Judge Castel found, had the respondent and Hallock "investigated Mr. Smolyar's behavior before Mr. Hallock filed the 'Attorney's Affidavit,' the firm would have known that his account was false" (Luscier v Risinger Bros. Transfer, Inc., 2015 WL 5638063, *13, 2015 US Dist LEXIS 129640, *38). Although less culpable than her law partner, Hallock (see Matter of Hallock, ____ AD3d ____ [decided herewith]), and notwithstanding the mitigation advanced, we conclude that the respondent's conduct merits a suspension from the practice of law for a period of six months, nunc pro tunc to March 16, 2020.
LASALLE, P.J., DILLON, DUFFY, BARROS and RIVERA, JJ., concur.
Upon remittitur, it is
ORDERED that pursuant to 22 NYCRR 1240.13, the respondent, Mary Malerba, admitted as Mary Sheila Malerba, is suspended from the practice of law for a period of six months, nunc pro tunc to March 16, 2020. In the reinstatement application (see 22 NYCRR 1240.16, 691.11), the respondent shall furnish satisfactory proof that during the period of suspension she (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), and (3) otherwise properly conducted herself; and it is further,
ORDERED that during the period of suspension and until further order of this Court, the respondent, Mary Malerba, admitted as Mary Sheila Malerba, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Mary Malerba, admitted as Mary Sheila Malerba, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Mary Malerba, admitted as Mary Sheila Malerba, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Maria T. Fasulo
Clerk of the Court